IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANNY F. ATTERBURY,<br><br>        Plaintiff,<br><br>   v.<br><br>MARISSA SANCHEZ, THERESE VARNEY, LORI BARLO, MARY MURTAGH, and DOE (HACN) SUPERVISOR,<br><br>        Defendants.<br>_____ / | No. CV 11-4932 SI<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |

*Pro se* plaintiff Danny Atterbury brought this action alleging discrimination and retaliation related to low-income housing managed by defendants. On November 16, 2011, Magistrate Judge Beeler granted plaintiff *in forma pauperis* status. On June 27, 2012, the action was reassigned to the undersigned for all purposes.

Presently before the Court is the motion by defendants Therese Varney, Lori Barlo, and Mary Murtagh to dismiss plaintiff's First Amended Complaint (the "FAC").[1] A hearing was scheduled for the instant motion on August 10, 2012. Prior to the hearing and pursuant to Civil Local Rule 7-1(b), the Court deemed this matter suitable for resolution without oral argument and took the matter off calender.[2] Having reviewed the parties' papers, and for good cause shown, the Court hereby GRANTS defendants' motion.

---

[1] Defendant Marissa Sanchez has filed a Notice of Joinder in defendants' motion as well. Dkt. 35. Sanchez's request to join is GRANTED.

[2] Also prior to hearing, Atterbury filed a "Request for Continuance," seeking a 60-day continuance of the hearing. That request is DENIED AS MOOT. Dkt. 38.

**BACKGROUND**

Plaintiff is a tenant residing in a low-income senior housing project named Rohlffs Concordia Manor ("Rohlffs"), located at 2400 Fair Drive, Napa California. FAC ¶ 6. Plaintiff states that he is an individual with a disability, which he describes as being an "old spine injury and arthritis." ¶ 20. Rohlffs is overseen by the Ecumenical Association for Housing ("EAH"). ¶ 11. Defendant Mary Murtagh is the President and Chief Executive Officer of the EAH. *Id.* Defendants Therese Varney and Lori Barlo are the manager and assistant manager, respectively, of Rohlffs. ¶¶ 9-10. The FAC does not describe defendant Sanchez's position, other than to state that in 2009, she emailed plaintiff a Section 8 application and "told him he must list the names of his family members." ¶ 8.[3] Though the FAC does not explicitly allege it, it appears from the facts that Atterbury was a resident of Rohlffs prior to and during all of the relevant activity alleged in the FAC.

Plaintiff alleges that "approximately over one year ago" he received an announcement in his mailbox stating that Rohlffs was opening the waiting list for its "project-based federally subsidized Section 8 rental assistance for low-income households." ¶ 12. Plaintiff completed an application for the Section 8 housing. *Id.* On May 31, 2011, plaintiff received a letter from defendant Barlo that plaintiff characterizes as "stating that his name is next on the list for Section 8 rental assistance, and Rohlffs has one Section 8 Studio apartment available." ¶ 13. Plaintiff attaches the letter to his opposition to the motion to dismiss.[4] In full, it states:

> Your name has recently come up on our waiting list to receive Project Based Section 8 rental assistance. If you are interested this would require you to relocate to a Federal unit as we do not have any assistance available for our state units. Please give us a call if you would like to begin the process.

Pl.'s Opp., Ex. 5 at 1. Plaintiff informed Barlo that he was interested in the housing. ¶ 14. Barlo showed plaintiff a studio apartment and "handed him some papers to sign," but also informed him that another tenant had completed papers for the same apartment and that if the other tenant's paperwork

---

[3]"Section 8" is the colloquial phrase that refers to a federal rental assistance program administered by the Department of Housing and Urban Development ("HUD").

[4]On a motion to dismiss, the Court may consider documents not physically attached to the complaint "if their authenticity is not contested and the plaintiff's complaint necessarily relies on them." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). Defendants do not contest the authenticity of the documents.

"comes back first the other tenant would get the Section 8 Studio apartment." *Id.* A few days later, Barlo informed plaintiff that the other tenant's paperwork came back first and that she gave the other tenant the Section 8 apartment. *Id.* Plaintiff complained about this behavior to the Department of Housing and Urban Development ("HUD") San Francisco Office, describing it as "unlawful and unfair figurative 'musical' section 8 apartments practices and procedures." ¶ 15. HUD personnel informed plaintiff (presumably after speaking with Barlo) that Barlo said she would make sure plaintiff would receive the next Section 8 opening. ¶ 15.

On September 16, 2011, plaintiff received another letter from Barlo, again informing him that his "name had come up on our Section 8 waiting list" and that there was one studio apartment available at Rohlffs. ¶ 16; Pl.'s Opp. Ex. 5 at 2. The letter requested that plaintiff inform Barlo if he was interested, and stated that she would then "make an appointment with you to see a unit and start the paperwork to see if you income qualify." *Id.* Plaintiff proceeded to the Rohlffs Office, where Barlo informed plaintiff that he "is next in line on the Rohlffs Section 8 list, but there is another tenant that is also interested in Section 8, but plaintiff can have the Section 8 assistance if the other tenant changes their mind about wanting Section 8." ¶ 16. Barlo called plaintiff a few days later and informed him that she gave the unit to the other tenant. *Id.*

Plaintiff then called various lawyers and "explained Lori Barlo's inappropriate Section 8 policies and procedures, that he reported Rohlff's management in the past for unsanitary conditions, they labeled him with a misperceived characterological disorder, and plaintiff believes this is retaliation and discrimination." ¶ 17. Plaintiff was told to contact Fair Housing Napa Valley ("FHNV") to complain, which plaintiff did. *Id.* Following his complaint to FHNV, Barlo informed plaintiff that there "had been a change" and that "he could have the Section 8 assistance." ¶ 19. Barlo then showed plaintiff a "wheelchair accessible Section 8 apartment." ¶ 20. Plaintiff states that the apartment did not "provide a bathtub (which is a reasonable accommodation, where plaintiff could soak and ease the stiffness and pain from his old spine injury and arthritis) . . . [Also] there were piles of garbage someone dumped around the front yard of the wheelchair accessible Section 8 apartment, there was an old mattress in the yard next door," and the apartment was too small. ¶ 20. Plaintiff was also concerned that because he was ambulatory, he would have to move once a wheelchair-bound person needed a Section 8 apartment.

3

¶ 20. Plaintiff turned down the apartment.

Plaintiff states that a few months before he received the first Barlo letter, he had complained about "the problem with unsanitary garbage and the noise other tenants made when they dumped their garbage in the can near plaintiff's front door." ¶ 22. Plaintiff filed a lawsuit against defendants in Napa Superior Court that "was opened when the Defendants refused to correct the problem with the unsanitary garbage cans, when the Defendants began the harassment and petty retaliation tactics, and where the inaccurate Defendant Varney affidavit was submitted by the law offices of Pahl & McCay to the Napa Superior Court." Pl.'s Opp. at 14. Attached to his opposition to the motion to dismiss is the "Declaration of Therese Varney in Opposition to Request for Order to Stop Harassment," which appears to have been submitted as part of that lawsuit. Pl.'s Opp., Ex. 6. Varney's declaration references a number of complaints made by plaintiff regarding the garbage cans. *Id.* ¶ 4.

In this lawsuit, plaintiff alleges that defendants Varney and Barlo "retaliated and discriminated against plaintiff, denied plaintiff Section 8, the property interest Section 8 entail[s], and harmed plaintiff financially, emotionally and caused pain and suffering." ¶ 24. He argues defendant Murtagh should be held liable for failure to supervise Varney and Barlo. He alleges that defendants violated the Rehabilitation Act, Americans with Disabilities Act, the First, Fourth, and Fourteenth Amendments of the United States Constitution, the Fair Housing Act, California Constitution Article I, Sections 7 and 13, California Government Code § 11135, the California Fair Employment and Housing Act, the Bane Civil Rights Act, the Unruh Civil Rights Act, and California Civil Code § 1942.5.

Plaintiff filed his original complaint in this Court, as well as an application to proceed *in forma pauperis* ("IFP"), on October 5, 2011. On November 16, 2011, Magistrate Judge Beeler granted the IFP application and dismissed the complaint for lack of subject matter jurisdiction because plaintiff failed to state a federal claim (plaintiff did not allege diversity jurisdiction). Plaintiff thereafter filed the FAC. On April 11, 2012, Magistrate Judge Beeler ordered service of the FAC on defendants, finding that the complaint sufficiently stated a federal claim because, "amongst other things, plaintiff raises the specter of ADA violations and discusses the entanglement of the defendant entity with the government." Dkt. 15 at 1. On June 13, 2012, defendants Barlo, Murtagh, and Varney filed the instant motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). On June 19, 2012, plaintiff filed an opposition. On July 3, 2012,

defendants filed a reply. On July 5, 2012, defendant Sanchez joined in the motion to dismiss.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 544, 555.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

*Pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Where a plaintiff is proceeding *pro se*, the Court has an obligation to construe the pleadings liberally and to afford the plaintiff the benefit of any doubt. *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc). However, *pro se* pleadings must still allege facts sufficient to allow a reviewing court to determine whether a claim has been stated. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted). Dismissal of a *pro se* complaint without leave to amend is proper only if it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Noll v.*

*Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987) (quoting *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980)).

## DISCUSSION

The gravamen of plaintiff's complaint is that defendants "retaliated and discriminated against plaintiff [and] denied plaintiff section 8" housing. FAC ¶ 24. It is not clear from the FAC whether plaintiff charges that the basis of the alleged discrimination and retaliation was plaintiff's disability or his complaints about the unsanitary conditions in the apartment building. Defendants devoted the bulk of their motion to dismiss attacking any claim that they acted on the basis of plaintiff's disability. *See* Def.'s Mot. at 6-8 (arguing that "the [FAC] fails to assert in any way, shape, or form that [defendants] knew or reasonably should have known of Atterbury's handicap."). In his opposition to the motion to dismiss, plaintiff clarifies that he claims that the discrimination and retaliation occurred because of his complaints about the unsanitary conditions, not his handicap. In a section entitled "Stuck on False Assumptions," plaintiff states the following:

> The Defendants seem to be stuck on the false assumption that Plaintiff is alleging the Defendants retaliated and discriminated against him on the basis of a disability, but Plaintiff reiterates that he is alleging the Defendants are retaliating and discriminating against him by using various methods to deny him the Section 8 rent reduction he qualifies for, the other federal benefits that are part and parcel of Section 8, and the Defendants are retaliating by denying Plaintiff the equal opportunity to his right to ADA (Americans with Disabilities Act) reasonable accommodations of a bathtub and a bed, *because Plaintiff exercised his First Amendment right* under the United States Constitution and laws, and the State Constitution and laws to freedom of speech, and to complain about unsanitary conditions at Rohlffs, *inter alia*, in the first place or instance, and because Plaintiff reported the Defendants to various federal and State government agencies when they took acts and omissions that clearly showed their displeasure at Plaintiff complaining, despite their claims to the contrary and their facade before public agencies and organizations.

Pl.'s Opp. at 6 (emphasis added). Thus, plaintiff is alleging that defendants' wrongful actions occurred because of his complaints about the garbage, not because of his disability.

This fact disposes of a number of plaintiff's federal claims. The Fair Housing Act protects against discrimination in the sale or rental of housing, but only where the discrimination is on the basis of race, color, religion, sex, familial status, or national origin. 42 U.S.C. § 3604. A landlord's actions that are based on a tenant's complaints are not actionable as discrimination under the FHA. *See*

*Visintini v. Hayward*, 2009 WL 2413356, *3 (N.D. Cal. Aug. 5, 2009) (Chen, J.) (dismissing similar complaint against landlord where the alleged adverse action occurred not on the basis of protected status or activity, but rather because the landlord allegedly did not like plaintiff). Similarly, in order to state a claim of disability discrimination under Title II of the ADA, a plaintiff must allege four elements: "1) he is an individual with a disability; 2) he is otherwise qualified to participate or receive the benefit of some public entity's services, programs, or activities; 3) he was either excluded from participation in or denied the benefits of the public entity's services or was otherwise discriminated against by the public entity; and 4) such exclusion, denial or discrimination was by reason of his disability." *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir.2004). The final element is missing here: plaintiff explicitly disclaims any allegation that defendants' actions were "on the basis of a disability." Pl.'s Opp. at 10.

Retaliation claims under the ADA require that the plaintiff was discriminated against because he pursued his rights under the ADA. *See Pardi v. Kaiser Foundation Hospitals*, 389 F.3d 840, 849-50 (9th Cir. 2004). The ADA provides that, "no person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). Here, plaintiff was not pursuing his rights under the ADA in his complaints; rather, he complained about unsanitary conditions of the housing complex. Plaintiff has failed to state a claim for discrimination or retaliation under the FHA or the ADA.

With respect to his federal claims, this leaves only plaintiff's First Amendment retaliation claim. Where a person's constitutional rights have allegedly been violated, a cause of action for relief may be brought pursuant to 42 U.S.C. § 1983. In order to state a claim under § 1983, a plaintiff must show both (1) the deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law. *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003); 42 U.S.C. § 1983. "As a general matter, private persons do not act under color of state law absent significant governmental involvement in the action." *Visintini*, 2009 WL 2413356 at *3 (*citing Johnson v. Knowles*, 113 F.3d 1114, 1118 (9th Cir. 1997)). The conduct of private individuals constitutes state action only where "there is such a close nexus between the State and the

challenged action that the individual's conduct may be fairly treated as that of the State itself, such as when the nominally private actor is controlled by an agency of the State, when it has been delegated a public function by the State, when it is entwined with governmental policies, or when government is entwined in its management or control." *Chudacoff v. University Medical Center of Southern Nevada*, 649 F.3d 1143, 1150 (9th Cir. 2011).

Defendants here are private individuals that work for the EAH (Murtagh), or Rohlffs (Barlo, Varney, and Sanchez), one of EAH's properties.  Plaintiff argues that Rohlffs/EAH Housing "is sufficiently infused with state action to support jurisdiction" because it "has been awarded a grant from [HUD] in the amount of $260,000 to enhance the social services program at Rohlffs Memorial Manor in Napa [and] EAH received [a] $10,000 grant from Wells Fargo Foundation for affordable housing efforts." Pl.'s Opp. at 13.  Plaintiff also points out that EAH partnered with a variety of local, state, and federal agencies to build Villages of Moa'Ku, a separate property in Hawaii. *Id.*

However, numerous courts in this District have found that the receipt of HUD or other federal funds is insufficient to establish that landlords acted under color of state law in making housing decisions. *See Visintini*, 2009 WL 2413356 at *3 (plaintiff's argument that defendant building owner/landlord received HUD funds, as well as other federal and state funds, insufficient to establish state actor status); *Gallman v. Pierce*, 639 F. Supp. 472, 481 (N.D. Cal. 1986) (Legge, J.) (holding that "[t]he fact that Section 8 [] landlords receive a portion of their rent from HUD [is] . . . insufficient alone to constitute governmental action.").  Analogously, the Supreme Court has held that the mere receipt of government funds does not make a privately-run nursing home or school a government actor. *See Blum v. Yaretsky*, 457 U.S. 991, 1010-11 (1982) (state subsidization of even more than 90% of the medical expenses does not convert the actions of the nursing homes into state action); *Rendell-Baker v. Kohn*, 457 U.S. 830, 840-41 (1982) (non-profit, privately operated school's receipt of public funds did not make its discharge decisions acts of state subject to suit under § 1983, notwithstanding that virtually all of the school's income was derived from government funding).  Similarly here, plaintiff's allegations that defendants' employers receive federal funds is insufficient to establish the "significant state involvement" necessary for state action.  Therefore, plaintiff's constitutional claims must be dismissed as well.

8

Without any remaining federal claims, there is no basis for federal question jurisdiction, and therefore the Court must dismiss the complaint for lack of subject matter jurisdiction. *See* 28 U.S.C. § 1331; *Tosco Corp. v. Communities for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001). As plaintiff was already given one opportunity to amend his complaint to establish federal jurisdiction, the Court finds that another opportunity for amendment is not warranted here. Plaintiff's complaint is therefore DISMISSED WITHOUT LEAVE TO AMEND. Any state claims should be brought in state court.[5]

## CONCLUSION

Defendants' motion to dismiss is GRANTED. Plaintiff's FAC is DISMISSED WITHOUT LEAVE TO AMEND. The clerk shall close the file.

Dkts. 10, 24, 35, 38.

**IT IS SO ORDERED.**

Dated: August 22, 2012

SUSAN ILLSTON
United States District Judge

---

[5] Plaintiff separately moved for appointment of counsel. *See* Dkt. 10. That motion is DENIED.

9